IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOSEPH GIBSON and RUSSELL
SCHULTZ,

               Plaintiffs,

v.

CITY OF PORTLAND, MULTNOMAH
COUNTY, MULTNOMAH COUNTY
DISTRICT ATTORNEY'S OFFICE,
CHRISTOPHER TRAYNOR, ROD
UNDERHILL, MIKE SCHMIDT, BRAD
KALBAUGH, and SEAN HUGHEY,

               Defendants.

No. 3:23-cv-00833-HZ

OPINION & ORDER

James L. Buchal
Murphy & Buchal LLP
P.O. Box 86620
Portland, OR 97286

Derek Angus Lee
Angus Lee Law Firm, PLLC
9105a N.E. Hwy 99
Ste 200
Vancouver, WA 98665

       Attorneys for Plaintiffs

Naomi Sheffield
William W. Manlove, III
Mallory R. Beebe
Caroline Turco
Portland City Attorney's Office
1221 S.W. Fourth Avenue
Room 430
Portland, OR 97204

      Attorneys for Defendants City of Portland and Christopher Traynor

Jenny M. Madkour
B. Andrew Jones
Multnomah County Attorney's Office
501 S.E. Hawthorne Boulevard, Suite 500
Portland, Oregon 97214

      Attorneys for Defendant Multnomah County

Jill Schneider
Oregon Department of Justice
100 S.W. Market Street
Portland, OR 97201

      Attorneys for Defendants Multnomah County District Attorney's Office, Rod Underhill,
      Mike Schmidt, Brad Kalbaugh, and Sean Hughey

HERNÁNDEZ, District Judge:

      This matter comes before the Court on the Motion to Dismiss of Defendants Multnomah

County District Attorney's Office, Rod Underhill, Mike Schmidt, Brad Kalbaugh, and Sean

Hughey ("County Defendants"), ECF 19; Defendant Multnomah County's Motion to Dismiss,

ECF 18; and the Motion to Dismiss of Defendants City of Portland and Christopher Traynor

("City Defendants"). For the reasons that follow, the Court grants Defendants' Motions.

## BACKGROUND

      The following facts are taken from the Complaint, the First Amended Complaint

("FAC"), and the parties' filings related to Defendants' Motions to Dismiss.

Plaintiffs allege "Defendants are extremely hostile to political and religious beliefs associated with patriotism, the Christian religion, and advocacy for limited government advanced by plaintiffs Schultz and Gibson." FAC, ECF 21, at ¶ 21. The FAC notes various political protests that Plaintiffs or members of right-leaning groups organized in Portland and the negative reception that such groups received from government leaders including City of Portland Mayor Ted Wheeler and the Portland City Council from 2017 through 2019. *See, e.g.*, FAC ¶¶ 27, 33, 39, 44-45, 69-70, 78-85, 171. Plaintiffs also generally allege that the City provided a positive reception to left-leaning protests and Antifa.

Plaintiffs allege that on May 1, 2019, they "appeared outside a Portland cider bar, known as Cider Riot, which in substance operated as a headquarters for Antifa within the City of Portland. They damaged no property, threw nothing, and committed no assaults. Their appearance was during daylight hours and lasted about half an hour." FAC ¶ 57. The FAC includes various factual allegations about the events of May 1, 2019. City Defendants, however, have submitted videos of Plaintiff Joseph Gibson's live feed of the events of May 1, 2019, as well as a video of the event from Stumptown Matters. Traynor Decl., ECF 22, Exs. A-B. These videos reflect that when Plaintiffs arrived at Cider Riot with other members of the Patriot Prayer group,[1] a hostile confrontation began between members of Plaintiffs' group and Antifa. Traynor Decl., Ex. A at 00:00 - 01:00. Gibson filmed several individuals at Cider Riot and stated Cider Riot is an "Antifa Bar," and the masked people in the bar's patio are Antifa members. *Id.* at 01:13–01:40. Several masked individuals yelled at Plaintiffs' group, threw projectiles, and sprayed pepper spray at Gibson and his group. *Id*. at 01:30–04:00. Although the

---

[1] Gibson founded and organized Patriot Prayer to "promot[e] patriotism, prayer, free speech, and conservative Christian values." FAC ¶ 3

videos show Gibson discouraging the use of weapons at various points and generally avoiding physical altercations, it also shows him appearing to encourage one-on-one fist fights between members of Patriot Prayer and Antifa. *Id.* at 17:17–25:17. The videos reflect that when Gibson noticed a fist fight breaking out between two men, he instructed the crowd to put weapons away and "let them fight" because it is "mutual combat." *Id*. at 17:17–34. When an individual told Gibson that "mutual combat" is not legal he responded, "[o]h, you're for the law? . . . . I'm talking about morals . . . . No one jump in, no one jump in . . . . Let the men handle it." *Id*. at 17:42–18:32. Gibson helped form a circle around the fight and repeatedly stated "[t]his is the way it's supposed to be, two men fighting." *Id*. at 19:20–32. When one of the men appeared to step back from the fight, Gibson shouted, "[o]h, he's out. He's out. You out? You quitting or are you in? Let's go. It's you two, let's go." *Id*. at 19:32–43. When the man returned to the fight Gibson continued to narrate and to instruct members of the crowd to put away weapons and not intervene. *Id*. at 19:43–20:02. When the fight appeared to be over Gibson stated, "[y]es, that's how you do it. See, two men . . . fighting like men instead of . . . running around punching people behind their back. He fought like a man. Now we're going to leave like real men," *id.* at 21:20–23, and seemed to begin to leave the area. *Id*. at 21:45–53. Gibson, however, then discovered another Patriot Prayer member wanted to engage in a fight and walked back toward Cider Riot. *Id*. at 21:52–22:00. When Gibson returned to the area he stated, "[w]ait, someone else wants to fight? . . . Another one? We got one more?" *Id*. at 22:00–15. Gibson asked members of the Antifa side of the crowd if they wanted to fight with the member of Patriot Prayer, stating "[h]e wants to fight, you don't want to fight him? You don't want to fight? Hey, do you want to fight?" *Id*. at 22:17–23:44. Gibson pointed to a member of the crowd and said, "I know you want to." *Id.* When it appeared no one wanted to engage in the fight, Gibson

encouraged members of the Patriot Prayer group to leave. *Id.* at 23:44–24:46. Before Plaintiffs'

group left, however, a female member of the Antifa group approached someone in Plaintiffs'

group and was knocked to the ground, apparently unconscious. *Id.* at 24:46–25:20. No one was

arrested at Cider Riot on May 1, 2019.

On May 2, 2019, Portland Police Bureau ("PPB") Detective Christopher Traynor was

assigned to investigate the events of May 1, 2019. Buchal Decl., ECF 26, Ex. 7 at 6. Traynor

reviewed videos, read police reports, and interviewed various individuals who were at the event.

Plaintiffs allege Traynor "made no serious effort to identify the perpetrators [of criminal

conduct] on the Antifa side," but also allege "the identities of at least two such attackers were

known to defendant Traynor." FAC ¶ 66. Plaintiffs allege Traynor "obtained video evidence of

one individual kicking Gibson and spitting on Gibson. Despite learning the identity of that

individual and despite Traynor having been notified in writing that Gibson wanted charges

pursued against that person, Traynor did not arrest that individual or . . . request charges be filed

by the prosecutor's office." *Id.* ¶ 67.[2]

On August 12, 2019, Multnomah County Deputy District Attorney Brad Kalbaugh

initiated the prosecution of Plaintiffs for the events of May 1, 2019. Kalbaugh filed affidavits in

support of arrest warrants for violation of Or. Rev. Stat. § 166.015 in Multnomah County Circuit

Court in which he stated he had probable cause to believe Plaintiffs had committed the crime of

riot based on the report of PPB Sergeant Jerry Cioeta, Traynor's investigation, various videos,

and other police reports. Schneider Decl., ECF 20, Exs. 1-2. Kalbaugh also filed motions to seal

the affidavit and arrest warrants on the grounds that "interviews with witnesses . . . are still

---

[2] Plaintiffs' counsel sent a letter to Traynor on October 17, 2019 "request[ing] that assault
charges be filed against" the individual who allegedly assaulted Gibson. Traynor Decl., Ex. C.

pending and . . . law enforcement is still investigating this case." *Id.*, Exs. 3-4. A Multnomah

County Circuit Court Judge granted both motions to seal. *Id.*

Kalbaugh conducted grand jury proceedings and the grand jury recommended separate

indictments of Plaintiffs. On August 19, 2019, the grand jury and then Multnomah County

District Attorney Rod Underhill[3] issued indictments for violation of Or. Rev. Stat. § 166.015 as

to both Plaintiffs. *Id.*, Exs. 5-6.

On August 11, 2020 Multnomah County District Attorney Mike Schmidt issued a policy

regarding protest-related cases in response to protests held in reaction to the murder of George

Floyd. FAC, Ex. 8 at 1. The policy applied various "presumptions to all referred cases arising

from the current protests," *id.,* including "presumptively declin[ing] to charge cases where the

most serious offenses are city ordinance violations and crimes that do not involve deliberate

property damage, theft, or the use or threat of force against another person" including "Riot,

ORS 166.015 - Unless accompanied by a charge outside of [the] list." *Id.* at 2 (emphasis in

original). Plaintiffs' counsel emailed Kalbaugh and requested their riot cases be dismissed based

on the policy. Kalbaugh responded that the policy was not retroactive and, therefore, the riot

charges against Plaintiffs would not be dismissed. FAC, Ex. 9 at 11.

On September 11, 2020, Gibson and Schultz filed an action in this Court against Schmidt,

Kalbaugh, and the Multnomah County District Attorney's Office ("MCDAO") bringing claims

pursuant to 42 U.S.C. §§ 1983 and 1985 and seeking an order enjoining the defendants from

prosecuting Gibson and Schultz's state criminal case. *Gibson v. Schmidt,* 3:20-cv-01580-IM.

Plaintiffs alleged "Defendants are engaged in a bad faith, selective, and retaliatory prosecuting of

---

[3] Underhill was the Multnomah County District Attorney from 2012 through July 31, 2020 and
Mike Schmidt became the Multnomah County District Attorney on August 1, 2020.

[Gibson and Schultz] because [Gibson and Schultz] have publicly expressed opinions with which

Defendants disagree. 3:20-cv-01580-IM Compl., ECF 1 at ¶ 2. "Specifically, [Gibson and

Schultz] protested against Antifa and the local government's failure to hold Antifa accountable

for criminal conduct. As a result of [Gibson and Schultz's] protest activity, they are currently

being prosecuted for Riot by Defendants" in violation of their rights under the First, Fifth, and

Fourteenth Amendments. *Id.* On February 26, 2021, United States District Court Judge Karin

Immergut found the *Younger* abstention applied and, therefore, dismissed the matter without

prejudice. O&O, ECF 57.

At some point Gibson and Schultz filed a motion to dismiss for selective prosecution in

their state criminal case. Gibson and Schultz asserted "they [were] being selectively prosecuted

due to their expression of their well-known political beliefs" and argued they were "being

prosecuted . . . because of their protected exercise of their First Amendment rights." Schneider

Decl., Ex. 7 at 1. Gibson and Schultz argued "the fact that they were charged, while similarly

acting participants in the May 1 incident who were espousing contrary political views were not

charged, demonstrates that [Gibson and Schmidt] were charged on the basis of the content of

their constitutionally protected speech, and not their actual conduct." *Id.* at 2. Gibson and Schultz

also pointed to the August 11, 2020, policy as evidence of the prosecution's discriminatory

purpose because

> the Policy preemptively declares that those engaged in certain kinds of
> First Amendment Activity (attending protests related to the murder of
> George Floyd) will not be charged even if they have committed the crime
> of Riot, while [Gibson and Schmidt], who were engaged in a different
> kind of First Amendment Activity (expressing their political views at the,
> May 1 Incident) *have* been charged with Riot.

*Id.* at 2-3 (emphasis in original). The court denied Gibson and Schultz's motion finding they did

not meet the "demanding standard" to establish selective prosecution. *Id.* at 4. The court noted it

could not "infer from this record a discriminatory intent by the State not making the Policy retroactive" nor did the record reflect a "credible showing of different treatment of similarly situated persons" arising from the May 1, 2019 event. *Id*. at 5. The court explained:

> The evidentiary record in this case reveals the May 1 Incident to be a free-wheeling, chaotic scene with individual, independent actors engaged in widely varying individual, independent actions. It was not an occasion where one "side" of a political argument acted as any kind of organized bloc while "the other side" did likewise, and where only one "side" was criminally charged for conduct that the other "side" engaged in equally.

> * * *

> This Court has found no cases in which another court has found selective prosecution arising out of a scene as chaotic and disorganized as the May 1 Incident. The general tumult of the incident renders futile any attempt to categorize the participants into two similarly situated camps distinguished solely by their expressed beliefs . . . . The actors at the May 1 Incident acted so particularly individually that they could only be evaluated on their individual behavior. It is therefore impossible to conclude that [Gibson and Schmidt] were "similarly situated" with other, non-charged individuals.

*Id.* at 5-6. The court also noted "many of those at the May 1 Incident were espousing views aligned with [Gibson and Schmidt], and also were not charged." *Id*. at 5 n.5.

On July 19, 2022, the prosecution rested its case in the riot trial and Gibson and Schultz moved for acquittal. The court granted Gibson and Schultz's motion on the basis that the prosecution had not proved the elements of riot as to them.

On June 8, 2023, Plaintiffs filed a Complaint in this Court against the City of Portland, Multnomah County, the MCDAO, PPB, Ted Wheeler, Danielle Outlaw, Jami Resch, Chuck Lovell,[4] Christopher Traynor, Rod Underhill, Mike Schmidt, Brad Kalbaugh, and Deputy

---

[4] Danielle Outlaw was the PPB Chief of Police from October 2017 through December 30, 2019; Jami Resch was the PPB Chief of Police from December 31, 2019, through June 10, 2020; Chuck Lovell was the PPB Chief of Police from June 11, 2020, through October 11, 2023.

District Attorney Sean Hughey and asserting claims against all Defendants under §§ 1983, 1985, and 1986, and state-law claims for defamation, malicious prosecution, false arrest and imprisonment, and negligence.

On September 27, 2023, Plaintiffs filed a FAC in which they assert the same claims but remove PPB, Wheeler, Outlaw, Resch, and Lovell as defendants.

On September 28, 2023, Multnomah County filed a Motion to Dismiss. On September 29, 2023, County Defendants filed a Motion to Dismiss. On that same day City Defendants filed a Motion to Dismiss. Plaintiffs filed a Response to Defendants' Motions and the Court took the matter under advisement on December 15, 2023.

## STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When evaluating the sufficiency of a complaint's factual allegations, the court must accept all material facts alleged in the complaint as true and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). A motion to dismiss under Rule 12(b)(6) will be granted if a plaintiff alleges the "grounds" of his "entitlement to relief" with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Id.* (citations and footnote omitted).

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (internal quotation marks omitted). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, a complaint must state a plausible claim for relief and contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct[.]" *Id.* at 679.

On a motion to dismiss, the court "may consider materials incorporated into the complaint or matters of public record." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010)(citations omitted). The Ninth Circuit has "extended the doctrine of incorporation by reference to consider documents in situations where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance." *Id.* (citing *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *Parrino v. FHP, Inc.*, 146 F.3d 699, 705, 706 n.4 (9th Cir. 1998), *rev'd* by statute on other grounds.

### COUNTY DEFENDANTS' MOTION TO DISMISS

County Defendants move to dismiss Plaintiffs' claims on the basis that the FAC fails to comply with Federal Rule of Civil Procedure 8(a)(2), County Defendants are absolutely immune from liability under § 1983, Plaintiffs' § 1985 and § 1986 claims are null in the absence of § 1983 claims, County Defendants are absolutely immune from liability for Plaintiffs' state-law claims, and Plaintiffs' state-law claims are untimely.

### I.    Rule 8(a)(2)

Defendant argues that Plaintiff's Complaint does not comply with Rule 8(a)(2) because it does not set out which act(s) or omission(s) by which Defendant(s) gave rise to Plaintiffs' claims.

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of (1) what the claims are and (2) the grounds on which they rest. Fed. R. Civ. P. 8(a)(2); *Twombly*, 550 U.S. 544, 555 (2007). "Shotgun pleading" occurs when "one party pleads that multiple parties did an act, without identifying which party did what specifically, or when one party pleads multiple claims and does not identify which specific facts are allocated to which claim, or when some of the named defendants do not appear in the factual allegations." *First-Citizens Bank & Tr. Co. v. HSBC Holdings*, No. 23-CV-02483-LB, 2024 WL 115933, at *13 (N.D. Cal. Jan. 10, 2024)(citing *Hughey v. Camacho*, No. 2:13-CV-2665-TLN-AC, 2014 WL 5473184, at *4 (E.D. Cal. Oct. 23, 2014)). *See also Mason v. Cnty. of Orange*, 251 F.R.D. 562, 563 (C.D. Cal. 2008)(a complaint that alleged each claim for relief is alleged against all defendants, regardless whether the facts alleged support such an allegation, was a shotgun pleading subject to dismissal.) "A complaint that employs this pleading device violates Rule 8 and should be dismissed." *Id.*

The FAC contains several broadly pled facts in which Plaintiffs assert allegations against "Defendants" without specifying which defendants engaged in the act. *See, e.g.*, ¶¶ 56, 58, 68, 71, 106, 107, 158. In addition, Plaintiffs' claims under § 1985, § 1986, and state law incorporate all factual allegations of the 46-page FAC and lump all Defendants together. For example, Plaintiffs' § 1985 claim incorporates paragraphs 1-256 of the FAC and states "Defendants conspired to deprive plaintiffs of federally-protected rights as alleged above, and at least one of the conspirators did an overt act in furtherance of the conspiracy, which did injured [*sic*] plaintiffs in their person and property and deprived them of rights and privileges of American citizens." FAC ¶ 257. Plaintiffs' § 1986 claim realleges paragraphs 1-258 of the FAC and alleges "Defendants had knowledge of the wrongs to be committed, had it within their power to prevent

or aid in preventing the commission of the same, but failed to do so." FAC ¶ 260. Plaintiffs'

state-law claims similarly fail to allege which acts of which Defendants constituted violations.

For example, Plaintiffs' false arrest and imprisonment claim realleges paragraphs 1-262 of the

FAC and states "Defendants caused plaintiffs to be arrested and confined, intended to cause such

arrest and confinement, plaintiffs were aware of the arrest and confinement, and

such arrest and confinement were unlawful." FAC ¶ 264. Plaintiffs' negligence claim realleges

paragraphs 1-264 of the FAC and states "Defendants' conduct unreasonably created a

foreseeable risk to plaintiffs' liberty, property and reputational interests, and proximately caused

injury to those interests." FAC ¶ 266. Plaintiffs plead multiple claims and do not identify which

specific facts are allocated to which claim and, as such, they fail to satisfy Rule 8(a)(2). *First-

Citizens Bank & Trust Co.,* 2024 WL 115933, at *13.

## II.    Immunity for § 1983 Claim

County Defendants assert that even if the FAC complies with Rule 8(a)(2), the Court

should dismiss Plaintiffs' § 1983 claims against them because they are entitled to absolute

immunity for the individual defendants and Eleventh Amendment immunity for the MCDAO.

### A.    Standard

"Prosecutors are 'absolutely immune from liability under section 1983 for their

conduct in initiating a prosecution and in presenting the State's case insofar as that conduct is

intimately associated with the judicial phase of the criminal process.'" *Roe v. City & Cnty. of San

Francisco*, 109 F.3d 578, 583 (9th Cir. 1997)(quoting *Burns v. Reed*, 500 U.S. 478, 486 (1991)).

*See also Kalina v. Fletcher*, 522 U.S. 118, 128 (1997)("[S]eeking an indictment is . . . the first

step in the process of seeking a conviction. Exposing the prosecutor to liability for the initial

phase of his prosecutorial work could interfere with his exercise of independent judgment at

every phase of his work. . . . Thus, we shield the prosecutor seeking an indictment [with absolute immunity] because any lesser immunity could impair the performance of a central actor in the judicial process.")(quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)). Absolute immunity also applies "during 'professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial . . . after a decision to seek an indictment has been made.'" *Garmon v. Cnty. of Los Angeles*, 828 F.3d 837, 843 (9th Cir. 2016)(quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)).

Prosecutors are also "entitled to absolute immunity for the decision not to prosecute." *Roe,*109 F.3d at 583. The Ninth Circuit explained: "The decision to charge a defendant with a crime may well be the most critical determination in the entire prosecutorial process. . . . There can be no question that the nature of the decision not to prosecute is 'intimately associated with the judicial phase of the criminal process.'" *Id.* (quoting *Burns*, 500 U.S. at 486). Absolute immunity for the decision not to charge is "important[t]" because "of the danger [that] a decision to prosecute would be influenced by a fear of liability for failing to prosecute." *Id.* at 584 (quotation omitted).

Absolute prosecutorial immunity applies in both a "single-case situation in which a disgruntled victim resents the prosecutor's failure to prosecute" and "for a decision involving a whole line of cases" such as when the prosecutor decides not to prosecute "any of an officer's unwitnessed arrests." *Id.* "Both practices involve a balancing of myriad factors, including culpability, prosecutorial resources and public interests and both procedures culminate in initiation of criminal proceedings against particular defendants, and in each it is the individual prosecution that begats the asserted deprivation of constitutional rights." *Id.* at 583-84 (quotation omitted).

Finally, an attorney supervising a trial prosecutor who is absolutely immune is also absolutely immune as are prosecutors who conduct "general office supervision or office training." *Van de Kamp v. Goldstein*, 555 U.S. 335, 346-48 (2009). "Functions for which absolute prosecutorial immunity have been granted include the lawyerly functions of organizing and analyzing evidence and law, and then presenting evidence and analysis to the courts and grand juries on behalf of the government; they also include internal decisions and processes that determine how those functions will be carried out." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 913 (9th Cir. 2012)(citing *Buckley*, 509 U.S. at 273) .

**B.      Allegations in the FAC**

Plaintiffs' allegations relating to Underhill are that he was pressured by Mayor Wheeler "to arrest and prosecute conservative and right-wing protestors" and that he supervised and worked with Kalbaugh in initiating the charging documents against Plaintiffs. FAC ¶¶ 55, 87-95. Plaintiffs allege Kalbaugh prepared charging documents, convened and conducted a grand jury hearing, issued indictments, and prosecuted Plaintiffs' at trial. FAC ¶¶ 88, 96, 111, 244. Plaintiffs allege Hughey worked with Kalbaugh in preparing charging documents and in prosecuting Plaintiffs. FAC ¶¶ 89-95, 113, 244.

Plaintiffs allege Schmidt adopted and maintained the August 2020 policy to "presumptively decline to prosecute riot and other cases where those that the police had accused of riot were involved in an event related to political activity of which defendants approved," declined to apply the policy retroactively to Plaintiffs' riot charge, and supervised Kalbaugh at trial. FAC ¶¶ 178, 208, 244.

The only allegation specifically directed at the MCDAO is that it changed its prosecution policy to "formally excuse Antifa attackers [*sic*] on plaintiffs and others of their

claims while prosecuting plaintiffs. . . whether or not objective review of the charging circumstances supported criminal charges." FAC ¶ 56.

### C.    Hughey and Underhill

Facts alleged by Plaintiffs as to Hughey all arise out of his conduct in initiating Plaintiffs' prosecution, evaluating the evidence, preparing for the presentation of evidence at trial and representing the State's case. Courts have made clear that all of that conduct is "intimately associated with the judicial phase of the criminal process" and, therefore, Hughey is entitled to absolute immunity for Plaintiffs' § 1983 claims. *See Roe,* 109 F.3d at 583; *Kalina,* 522 U.S. at 128; *Garmon,* 828 F.3d at 843. Underhill is also absolutely immune for Plaintiffs' § 1983 claims for any decision to prosecute conservative and right-wing protestors as well as for his supervision of and work with Kalbaugh in initiating the charging documents against Plaintiffs. *See Roe,* 109 F.3d at 583; *Van de Kamp,* 555 U.S. at 346-48.

### D.    Kalbaugh

The facts alleged as to Kalbaugh arise out of his conduct in initiating Plaintiffs' prosecution, evaluating the evidence, preparation for the presentation of evidence at trial and representing the State's case. As noted, courts have held that this conduct is "intimately associated with the judicial phase of the criminal process" and, therefore, subject to absolute immunity. *See Roe,* 109 F.3d at 583; *Kalina,* 522 U.S. at 128;  *Garmon,* 828 F.3d at 843. Plaintiffs also assert Kalbaugh "fil[ed] false probable cause affidavits for the crime of riot under ORS 166.015" including the following "false or misleading" statements: "Plaintiffs were 'physically threatening members of the Antifa group'; Plaintiff Gibson 'repeatedly challeng[ed]' members of the Antifa group to fight him'; and Plaintiff Gibson was 'physically pushing Heather Clark.'" FAC ¶ 96 (quoting Schneider Decl., Ex. 1 at 1-2). Plaintiffs allege Kalbaugh is,

therefore, not protected by absolute immunity.[5] Plaintiffs rely on *Van de Kamp* and *Kalina* to support their assertion. Those cases, however, involved circumstances in which prosecutors acted as complaining witnesses in support of warrant applications. *Van de Kamp*, 555 U.S. at 343 (citing *Kalina*, 522 U.S. at 132 (Scalia, J., concurring)("We have held that absolute immunity does not apply when a prosecutor . . . acts as a complaining witness in support of a warrant application."). County Defendants point out that Kalbaugh executed the probable cause affidavits in this case in his role as deputy district attorney acting as an advocate of the State not as a complaining witness and he completed them as part of the process of initiating a prosecution. In *Kalina* the prosecutor, like Kalbaugh, had "commenced a criminal proceeding against [the plaintiff] by filing three documents": "an information charging [the plaintiff] with burglary"; "a motion for an arrest warrant"; and a probable cause certification that "summarized the evidence supporting the charge." 522 U.S. at 120–21. The Supreme Court held that the prosecutor's "activities in connection with the preparation and filing of" the information and the motion for an arrest warrant were protected by absolute immunity. *Id*. at 129. In *Imbler v. Pachtman* the plaintiff alleged defendant district attorney knowingly used false testimony at trial. The Court held that the district attorney acted within the scope of his duties in initiating and pursuing the criminal prosecution and in presenting the State's case and was absolutely immune from a civil suit for damages under §1983 for the alleged deprivations of the accused's constitutional rights. 424 U.S. 409, 431 (1976). The Court acknowledged "this immunity does leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty," but found "the alternative of qualifying a prosecutor's immunity

---

[5] County Defendants deny that Kalbaugh made any false statements in his affidavits. As noted, the video reflects the May 1 event was a chaotic, free-wheeling series of interactions among multiple individuals.

would disserve the broader public interest. It would prevent the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system." *Id.* at 427-28. The Court, therefore, concludes under these circumstances Kalbaugh is entitled to absolute immunity.

### E.  Schmidt

Plaintiffs allege Schmidt adopted and maintained the August 2020 policy to "presumptively decline to prosecute riot and other cases where those that the police had accused of riot were involved in an event related to political activity of which defendants approved," declined to apply the policy retroactively to Plaintiffs' riot charge, and supervised Kalbaugh at trial.

Schmidt is entitled to absolute immunity for supervising Kalbaugh at trial. *See Roe,* 109 F.3d at 583; *Van de Kamp,* 555 U.S. at 346-48.

Schmidt is also absolutely immune for his decision to "decline to prosecute riot and other cases where those that the police had accused of riot were involved in an event related to political activity of which defendants approved." As noted, absolute prosecutorial immunity applies in both a "single-case situation in which a disgruntled victim resents the prosecutor's failure to prosecute" and "for a decision involving a whole line of cases." *Roe,* 109 F.3d at 583. In *Carillo v. City of Portland*, Magistrate Judge Youlee M. You found Schmidt's decision "not to pursue a class of cases is clearly 'connected with the prosecutor's role in judicial proceedings' and is therefore subject to absolute immunity." No. 3:21-CV-01340-YY, 2022 WL 7953362, at *2 (D. Or. July 11, 2022). Judge You noted "[e]ven if Schmidt's charging decisions are framed as the creation of administrative policy regarding how trial resources should be used, that does not change the function of those decision from 'advocatory' to 'administrative' for analyzing

absolute immunity." *Id.* "A policy of pursuing particular cases may be an administrative decision, but it is distinctly related to the prosecutor's advocacy role, and stands apart from other administrative tasks such as 'workplace hiring, payroll administration, the maintenance of physical facilities, and the like.'" *Id.* (quoting *Van de Kamp*, 555 U.S. at 344). United States District Judge Michael Simon adopted Judge You's Findings and Recommendation and rejected the plaintiff's assertion that "Judge You too broadly construed the doctrine of prosecutorial immunity." *Carrillo v. City of Portland*, No. 3:21-CV-1340-YY, 2022 WL 3974988, at *1 (D. Or. Sept. 1, 2022). The plaintiff asserted in his objections to the findings and recommendation that "prosecutorial immunity does not apply to a decision to decline to prosecute prospective cases without an individual determination of the merits of the case." *Id.* Judge Simon, however, found the plaintiff's objection was "belied by the Ninth Circuit's decision in *Botello v. Gammick*, 413 F.3d 971 (2005)." In *Botello* the court applied absolute immunity to the prosecutor's decision not to prosecute all future cases in which an individual participated "in any phase of the investigative process . . . under any circumstances, for instance even where there might be corroborating evidence or testimony." *Botello*, 413 F.3d at 977. The Ninth Circuit concluded the prosecutors' "decision not to prosecute Botello's cases and their communication of that decision is intimately tied to the judicial process and is thus entitled to absolute immunity." *Id.* Accordingly, Judge Simon adopted the findings and recommendation and granted Schmidt's motion to dismiss. This Court finds the reasoning of *Carrillo* to be persuasive and adopts it here. The Court, therefore, concludes Schmidt is entitled to absolute immunity for his decision to "decline to prosecute riot and other cases where those that the police had accused of riot were involved in an event related to political activity of which defendants approved" and to apply that policy only prospectively.

F.    **MCDAO**

Plaintiffs, relying on *Owen v. City of Independence, Missouri*, 445 U.S. 622 (1980), assert that the MCDAO cannot claim personal immunity defenses in this official-capacity lawsuit. County Defendants assert Plaintiffs incorrectly interpret the holding in *Owen* and, therefore, the MCDAO may assert the defense of absolute prosecutorial immunity.[6] County Defendants also assert that the MCDAO is an arm of the state and, therefore, enjoys Eleventh Amendment immunity for Plaintiffs' claims.

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States[.]" U.S. Const. amend. XI. "In general, the Eleventh Amendment shields nonconsenting states from suits for monetary damages brought by private individuals in federal court." *N.E. Med. Servs., Inc. v. Cal. Dep't of Health Care Servs., Health and Human Servs. Agency, State of Ca.*, 712 F.3d 461, 466 (9th Cir. 2013). "States [and] governmental entities that are considered 'arms of the state' . . . are entitled to Eleventh Amendment Immunity and are not considered 'persons' for purposes of 42 U.S.C. § 1983." *Neri v. Cnty. of Stanislaus Dist. Att'ys Off.*, No. 1:10-cv-823 AWI GSA, 2010 WL 3582575, at *4 (E.D. Cal. Sept. 9, 2010)(citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71 (1989)).

Oregon courts have held "'district attorneys are officers of the state and of the counties within their respective districts,' and will 'constitute a state entity where the district attorney acts on behalf of the state, not a county entity.'" *Est. of Duncan v. Wallowa Cnty. Sheriff's Dep't*, No. 2:19-CV-02017-SU, 2020 WL 13749990, at *7 (D. Or. Oct. 27, 2020), report

---

[6] Because the Court concludes the MCDAO enjoys Eleventh Amendment immunity from Plaintiff's claims, the Court does not address the parties' arguments about *Owen*.

and recommendation adopted, No. 2:19-CV-02017-SU, 2020 WL 13750038 (D. Or. Nov. 19, 2020)(quoting *Ashbough v. Yamhill Cnty.*, Case No. 3:17-cv-1038-JR, 2019 WL 7879745, at *9 (D. Or. Aug. 13, 2019). *See also Ouma v. Clackamas Cnty.*, No. 3:12–cv–01465–HZ, 2014 WL 1874051, at *3 (D. Or. May 7, 2014)("The District Attorney's Office is an arm of the State, not the county."); *Rauch v. Columbia Cnty.*, No. CV 05–914–HA, 2005 WL 2104586 (D. Or. Aug. 29, 2005)("District attorneys are state, not local, officials, *see generally* Oregon Revised Statute Chapter 8[.]"); *Quintero v. Suver*, No. 6:13-CV-01739-PK, 2014 WL 5261451, at *3 (D. Or. Oct. 15, 2014)(same). In *Todd v. Boyd*, this Court held that the Klamath County District Attorney's Office was entitled to Eleventh Amendment immunity as to the plaintiff's § 1983 claim that concerned "conduct when its deputy district attorneys were acting as arms of the state to prosecute state crimes." No. 3:19-CV-02029-HZ, 2021 WL 1197789, at *6 (D. Or. Mar. 29, 2021). Similarly, in *Cannon v. Polk Cnty. Dist. Atty.*, 501 F. App'x 611, 613 (9th Cir. 2012), the Ninth Circuit affirmed "the dismissal of the Polk County District Attorney's office . . . because it is entitled to Eleventh Amendment immunity, since 'DAs . . . act as state officials . . . when acting in their prosecutorial capacity.'" (quoting *Del Campo v. Kennedy*, 517 F.3d 1070, 1073 (9th Cir. 2008)). The Ninth Circuit has also held that a district attorney's office is entitled to Eleventh Amendment immunity for actions taken in its prosecutorial capacity. *Davis v. San Diego Dist. Att'y*, 765 F. App'x 409 (9th Cir. 2019)(citing *Jackson v. Barnes*, 749 F.3d 755, 767 (9th Cir. 2014)(district attorney's office acts as a state office as to actions taken in its prosecutorial capacity and is not subject to suit under § 1983).

The only allegation specifically directed at the MCDAO is that it changed its prosecution policy to "formally excuse Antifa attackers [*sic*] on plaintiffs and others of their claims while prosecuting plaintiffs. . . whether or not objective review of the charging

circumstances supported criminal charges." FAC ¶ 56. The decision "not to pursue a class of

cases is clearly 'connected with the prosecutor's role in judicial proceedings'" and, therefore, is

related to actions taken in a prosecutorial capacity. *Carillo*, 2022 WL 7953362, at *2. As such,

the MCDAO was acting as a state office in making that prosecutorial policy decision and,

therefore, it is shielded from Plaintiffs' § 1983 claims by Eleventh Amendment immunity.

Accordingly, the Court grants County Defendants' Motion to Dismiss Plaintiffs'

§ 1983 claims against them.

## III.    Plaintiffs' § 1985 Claim

In their § 1985 claim Plaintiffs reallege all paragraphs of their FAC and allege

"Defendants conspired to deprive plaintiffs of federally protected rights as alleged above, and at

least one of the conspirators did an overt act in furtherance of the conspiracy, which did injured

[*sic*] plaintiffs in their person and property and deprived them of rights and privileges of

American citizens." FAC ¶ 258.

County Defendants move to dismiss this claim because the absence of a § 1983

deprivation of rights precludes a § 1985 conspiracy claim predicated on the same allegations. *See*

*Caldeira v. Cnty. of Kauai*, 866 F.2d 1175, 1182 (9th Cir. 1988)("The absence of a section 1983

deprivation of rights precludes a section 1985 conspiracy claim predicated on the same

allegations."). The Ninth Circuit has also held that prosecutorial immunity applies to § 1985

claims. *See Agnew v. Moody*, 330 F.2d 868, 869 (9th Cir. 1964).

The Court concludes that for the same reasons that absolute prosecutorial immunity bars

Plaintiffs' § 1983 claims against Underhill, Kalbaugh, Hughey, and Schmidt, it also bars

Plaintiffs' § 1985 claim against them. *See Biro v. Keyes*, No. 221CV06835JGBMAA, 2022 WL

18277783, at *14 (C.D. Cal. Nov. 10, 2022), report and recommendation adopted, No.

221CV06835JGBMAA, 2023 WL 218789 (C.D. Cal. Jan. 13, 2023)(finding prosecutorial immunity would bar the plaintiff's abandoned § 1985 claims for the same reason that it barred the plaintiff's § 1983 claims); *Henderson v. Hamilton*, No. 121CV00697NONESKO, 2021 WL 5529893, at *6 (E.D. Cal. Nov. 24, 2021), report and recommendation adopted, No. 121CV00697JLTSKO, 2022 WL 95221 (E.D. Cal. Jan. 10, 2022)(finding absolute immunity barred the plaintiff's § 1985 conspiracy claims against the district attorney and deputy district attorney)

      With respect to the MCDAO, courts have held that plaintiffs cannot pursue a § 1985 claim against a defendant with Eleventh Amendment immunity. *See, e.g.*, *Perreira v. Adult Client Servs. Branch*, No. CV 23-00066 LEK-WRP, 2023 WL 5627958, at *4 (D. Haw. Aug. 31, 2023)("Perreira cannot pursue his § 1983 claims, and his related § 1985 and § 1988 claims, against Defendant because its Eleventh Amendment immunity from such claims remains in effect."); *Thomas v. Cal.*, No. CV 20-05755-DMG-RAOX, 2020 WL 8572493, at *2 (C.D. Cal. Oct. 26, 2020)(citing *Mitchell v. Los Angeles Cmty. Coll. Dist.*, 861 F.2d 198, 201 (9th Cir. 1988)(the state "possesses [Eleventh Amendment] immunity from Plaintiff's claims under 42 U.S.C. sections 1981 and 1985.").  Plaintiffs, therefore, may not pursue their § 1985 claim against the MCDAO.

      Accordingly, the Court grants County Defendants' Motion to Dismiss Plaintiff's § 1985 claim.

## IV.   Plaintiff's § 1986 Claim

      Courts have made clear that "[w]ithout a viable claim under 42 U.S.C. section 1985, Plaintiff's claim under 42 U.S.C. section 1986 also fails." *Thomas*, 2020 WL 8572493, at *2 (citing *Trerice v. Pedersen*, 769 F.2d 1398, 1403 (9th Cir. 1985)("[A] cause of action is not

provided under 42 U.S.C. § 1986 absent a valid claim for relief under section 1985.")). In

*Thomas* the court found the State of California had not waived its Eleventh Amendment

immunity with respect to claims brought under § 1983 and that the State "possesse[d] immunity

from Plaintiff's claims under 42 U.S.C. sections 1981 and 1985." *Id.* As a result, the court also

concluded the plaintiff could not bring a claim against the State for violation of § 1986.

As in *Thomas,* County Defendants possess immunity from Plaintiffs' claims under

§§ 1983 and 1985. Accordingly, the Court also concludes County Defendants possess absolute

prosecutorial and Eleventh Amendment immunity from Plaintiffs' § 1986 claims. The Court,

therefore, grants County Defendants' Motion to Dismiss Plaintiffs' § 1986 claim.

**V.      Plaintiffs' State Law Claims**

Plaintiffs bring state-law claims for malicious prosecution, false arrest and imprisonment,

and negligence related to "the initiation and continuance of criminal proceedings against

plaintiffs." FAC ¶ 262. County Defendants assert they are entitled to absolute prosecutorial

immunity for these claims.

In *Imbler* the Supreme Court noted that since at least 1927 it has held that prosecutors are

"'immune from a civil action for malicious prosecution based on an indictment and prosecution,

although it results in a verdict of not guilty rendered by a jury.'" 424 U.S. at 422 (quoting *Yaselli*

*v. Goff*, 275 U.S. 503 (1927)). The Court explained the "common-law rule of [prosecutorial]

immunity is . . . well settled" and is "based upon the same considerations that underlie the

common-law immunities of judges and grand jurors acting within the scope of their duties." *Id.*

at 422-24. Including "concern that harassment by unfounded litigation would cause a deflection

of the prosecutor's energies from his public duties, and the possibility that he would shade his

decisions instead of exercising the independence of judgment required by his public trust." *Id.* at

423. Courts in Oregon have made clear that "[u]nder both federal and state law, a prosecutor is absolutely immune when performing the traditional functions of an advocate." *Peterson v. Porter*, No. 3:16-CV-01955-JR, 2018 WL 7078667, at *12 (D. Or. Nov. 1, 2018), report and recommendation adopted, 2019 WL 267704 (D. Or. Jan. 18, 2019(citing *Genzler v. Longanbach*, 410 F.3d 630, 636 (9th Cir. 2005)). This Court has already concluded that County Defendants were performing the traditional functions of an advocate at all relevant times. The Court, therefore, also concludes County Defendants enjoy absolute immunity as to Plaintiffs' state-law malicious prosecution claim.

In addition, Oregon courts have held that prosecutors are absolutely immune from claims for negligence and false arrest and imprisonment when those claims involve prosecutors performing the traditional functions of an advocate. *See, e.g.*, *Carillo*, 2022 WL 7953362, at *4 (finding Multnomah County District Attorney Schmidt to be absolutely immune for the plaintiff's negligence claim because Schmidt was performing the traditional functions of an advocate); *Heusel v. Multnomah Cnty. Dist. Att'y's Off.*, 163 Or. App. 51, 53 (1999)(finding the plaintiff's claims for false imprisonment and negligence against the MCDAO were barred by absolute immunity); *Jackson v. Multnomah Cnty.*, 76 Or. App. 540, 545–46 (1985)(deciding "when, how, and against whom to proceed," district attorneys exercise "the sort of discretion for which [they are] immune at common law"); *Hoffart v. Herman*, 328 F. App'x 972, 973 (5th Cir. 2009)("We need not reach the questions of personal jurisdiction and venue because we agree that Hoffart's claims [against the Washington County District Attorney] - all stemming from the discretionary decision not to prosecute - are barred by absolute prosecutorial immunity under both federal and Oregon law.")(citing *Van de Kamp v. Goldstei*n, 555 U.S. 355 (2009); *Imbler*,

424 U.S. at 431; Or. Rev. Stat. § 30.265(3)(c); and *Tennyson v. Children's Servs. Div.,* 308 Or. 80 (1989)).

The Court, therefore, concludes County Defendants possess absolute immunity for Plaintiffs' state-law claims. The Court, therefore, grants County Defendants' Motion to Dismiss Plaintiffs' state-law claims.

In summary, the Court grants County Defendants' Motion to Dismiss Plaintiffs' claims against them. In addition, because amendment would not cure the defects in Plaintiffs' claims against County Defendants, the Court dismisses the claims against County Defendants without leave to amend.

## MULTNOMAH COUNTY'S MOTION TO DISMISS

Plaintiffs bring claims against Multnomah County (1) pursuant to 42 U.S.C. § 1983 and *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), for "customs or policies which inflicted . . . injuries upon plaintiffs including . . . [o]n the part of . . . Multnomah County . . . to defame plaintiffs, selectively prosecute plaintiffs, and abuse prosecutorial discretion to insulate plaintiffs' political opponents from liability for criminal misconduct"; (2) under § 1983 for ratification of "the conduct of its officials"; (3) under § 1985 for conspiracy to "deprive plaintiffs of federally-protected rights"; (4) under § 1986; and (5) state-law claims for malicious prosecution, false arrest and imprisonment, and negligence.

Multnomah County moves to dismiss Plaintiffs' claims on the grounds that (1) Plaintiffs may not sue Multnomah County for prosecution decisions or policies of the Multnomah County District Attorney because under Oregon law district attorneys are officers of the state rather than county actors; (2) the FAC does not allege facts sufficient to state a *Monell* claim; (3) the FAC

does not allege facts sufficient to allege ratification; (4) the FAC does not allege facts sufficient to allege conspiracy under § 1985; (5) Plaintiffs cannot state a claim under § 1986; and (6) Plaintiff's state-law claims are untimely.

## I. Multnomah County District Attorneys as State Actors

Multnomah County asserts it may not be sued for prosecution decisions or policies of the Multnomah County District Attorney because under Oregon law district attorneys are officers of the state rather than county actors. Oregon courts have held that district attorneys are officers of the state. In *State v. Coleman*, the court explained that the Oregon "legislature has expressly designated district attorneys as prosecutors 'on behalf of the state.'" 131 Or. App. 386, 390 (1994)(quoting ORS 8.660(1)). "Indeed, throughout Oregon's history, district attorneys have been regarded as state officers who act as prosecutors for the executive branch." *Id.* (citing *State v. Clark*, 291 Or. 231, 245 (1981); *State v. Douglas Cnty. Rd. Co.*, 10 Or. 198, 201 (1882); *Rutherford v. City of Klamath Falls*, 19 Or. App. 103, 106 (1974), *overruled on other grounds by Hunter v. State,* 84 Or. App. 698, *rev'd,* 306 Or. 529 (1988)). This Court, other Oregon courts, and the Office of the Oregon Attorney General have repeatedly held that "[t]he District Attorney's Office is an arm of the State, not the county." *Ouma v. Clackamas Cnty.*, No. 3:12–cv–01465–HZ, 2014 WL 1874051, at *3 (D. Or. May 7, 2014). *See also Barnett v. Marquis*, No. 3:13-CV-01588-HZ, 2014 WL 12918940, at *2 (D. Or. Mar. 24, 2014)(finding the Clatsop County District Attorney is an arm of the state); *Heidt v. City of McMinnville*, No. 3:15-CV-00989-SI, 2016 WL 7007501, at *13 (D. Or. Nov. 29, 2016)(finding Yamhill County District Attorney's Office is an arm of the state); *Quintero v. Suver*, No. 6:13-CV-01739-PK, 2014 WL 5261451, at *3 (D. Or. Oct. 15, 2014)(same). In *Todd v. Boyd*, this Court held that the Klamath County District Attorney's Office was "acting as [an] arm[] of the state to prosecute state

crimes." No. 3:19-CV-02029-HZ, 2021 WL 1197789, at *6 (D. Or. Mar. 29, 2021). Similarly in *Cannon v. Polk County District Attorney*, the Ninth Circuit affirmed "the dismissal of the Polk County District Attorney's office . . . because it is entitled to Eleventh Amendment immunity, since 'DAs . . . act as state officials . . . when acting in their prosecutorial capacity.'" 501 F. App'x 611, 613 (9th Cir. 2012)(quoting *Del Campo v. Kennedy*, 517 F.3d 1070, 1073 (9th Cir. 2008)). The Ninth Circuit has also held that a district attorney's office acts as a state office as to actions taken in its prosecutorial capacity. *Davis v. San Diego Dist. Att'y*, 765 F. App'x 409 (9th Cir. 2019)(citing *Jackson v. Barnes*, 749 F.3d 755, 767 (9th Cir. 2014)); 49 Or. Op. Att'y Gen. 14, 1998 WL 59100 (1998)(quotation marks and citations omitted)(explaining that under Oregon law, a district attorney is a "member of the executive branch of state government despite the fact that he or she is technically employed by a county." He or she performs "functions within the executive branch of *state* government." District attorneys and deputy district attorneys are sworn to "conduct prosecutions on behalf of the state, and are constitutionally designated as the law officers of the State who shall perform their law enforcement duties as the Legislative Assembly may direct." Emphasis in original).

The Court, therefore, concludes Multnomah County may not be held liable for acts of the MCDAO or Multnomah County District Attorneys. The Court, therefore, grants Multnomah County's Motion to Dismiss Plaintiffs' § 1983 claims against Multnomah County.

## II.    Plaintiffs' *Monell* Claim

In their first claim under § 1983 Plaintiffs reallege all prior allegations and assert "[t]he foregoing facts establish one or more customs or policies which inflicted the injuries upon plaintiffs, including but not limited to: . . . on the part of . . . Multnomah County . . . to defame and selectively prosecute plaintiffs, and abuse prosecutorial discretion to insulate plaintiffs'

political opponents from liability for criminal misconduct." FAC ¶ 255(b). Plaintiffs also allege

Multnomah County "ratified the conduct of its officials as alleged herein." FAC ¶ 256.

Multnomah County moves to dismiss Plaintiffs' *Monell* claim on the basis that Plaintiffs

have not pled a viable claim against Multnomah County.

### A.     Standard

Section 1983 liability of a local governing body arises only when "action pursuant

to official . . . policy of some nature caused a constitutional tort" and not on the basis of

*respondeat superior. Monell*, 436 U.S. at 691-94. "The 'official policy' requirement was intended

to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby

make clear that municipal liability is limited to action for which the municipality is actually

responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)(emphasis in original).

The circumstances in which *Monell* liability may be found under § 1983 are "carefully

circumscribed." *Fuller v. City of Oakland*, 47 F.3d 1522, 1534 (9th Cir. 1995). To establish an

official policy or custom sufficient for *Monell* liability, a plaintiff must show a constitutional

violation resulting from (1) an employee acting pursuant to an expressly adopted official policy;

(2) an employee acting pursuant to a longstanding practice or custom; or (3) an employee acting

as a final policymaker. *Webb v. Sloan*, 330 F.3d 1158, 1164 (9th Cir. 2003).

### B.     Policy, Practice or Custom of Multnomah County

To plead a claim for *Monell* liability caused by a government policy or

longstanding practice or custom, Plaintiffs must allege (1) they were deprived of a constitutional

right; (2) the municipality had a policy, longstanding practice, or custom; (3) the policy, practice,

or custom amounted to "deliberate indifference to the plaintiff's constitutional right"; and (4) the

policy, practice, or custom was "the moving force behind the constitutional violation."

*Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011)

Multnomah County asserts Plaintiffs fail to plead specific facts that show a constitutional violation that resulted from an official policy or custom of Multnomah County. Plaintiffs assert in their Response that the policy at issue is one of "not prosecuting those who, in fact, violate the law but who acquiesce in some manner to the government, while it continues to prosecute those who refuse to acquiesce." Pls. Rep., ECF 25, at 44. As noted, the decision to enact the policy challenged by Plaintiffs was made by Schmidt rather than Multnomah County. Schmidt and Underwood were acting as officers of the State and both are absolutely immune for liability arising from that decision.

### C.    Acts of Decisionmakers

A municipality can be held liable for a constitutional injury when a person "whose edicts or acts . . . may fairly be said to represent official policy" causes a constitutional violation. *Brewster v. Shasta Cnty.*, 275 F.3d 803, 805 (9th Cir. 2001) (citing *Monell*, 436 U.S. at 694). Plaintiffs also assert they have sufficiently pled ratification or acts of decisionmakers because Underhill "abandoned the prior, ethical policy" and Schmidt, who was the "highest ranking policymaking official" adhered to that decision.

"[W]hether a particular official has 'final policymaking authority' is a question of state law." *Grant County, Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)(citation omitted). As noted, under Oregon law district attorneys act as agents of the state not the county. Accordingly, courts in Oregon have concluded district attorneys "cannot be considered . . . final policymaker[s]" for Multnomah County. *Olson v. Grant Cnty.*, No. 2:20-CV-01342, 2023 WL 2598927, at *13 (D. Or. Mar. 22, 2023)(citation omitted). *See also Wilson v. Or.*, No.

3:11-CV-01061-PK, 2013 WL 6196966, at *11 (D. Or. Aug. 9, 2013), report and recommendation adopted 2013 WL 6196983, at *11 (D. Or. Nov. 27, 2013)(finding the Umatilla County District Attorney was not a final policymaker under Oregon law). Underhill and Schmidt are not final policymakers for Multnomah County and the decision to enact and continue with the policy cannot be attributed to Multnomah County.

The Court, therefore, concludes Plaintiffs fail to state a *Monell* claim against Multnomah County.

### III.    Plaintiffs' § 1985 Claim

Plaintiffs allege in their FAC that all Defendants violated 42 U.S.C. § 1985 when they "conspired to deprive plaintiffs of federally protected rights as alleged above, and at least one of the conspirators did an overt act in furtherance of the conspiracy, which did injured plaintiffs in their person and property and deprived them of rights and privileges of American citizens." FAC ¶ 258.

### A.    Standard

"Section 1985 proscribes conspiracies to interfere with civil rights." *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1039 (9th Cir. 1990). Section 1985 contains discrete substantive clauses. *Bretz v. Kelman*, 773 F.2d 1026, 1032 n.3 (9th Cir. 1985).[7] The second clause of §1985(2) "applies to conspiracies to obstruct justice in state courts with intent to deprive a person the equal protection of the laws." *Biro*, 2022 WL 18277783, at *9 (citing *See Kush v. Rutledge*, 460 U.S. 719, 725 (1983)). "To state a claim for conspiracy to violate constitutional rights, 'the plaintiff must state specific facts to support the existence of the claimed

---

[7] Plaintiffs do not indicate in their FAC what clause of ¶ 1985 they are bringing their claims under, but in their Response to Defendants' Motions to Dismiss they assert they bring their claims under clause 2.

conspiracy.'" *Id.* (quoting *Olsen v. Idaho State Bd. of Med.,* 363 F.3d 916, 929 (9th Cir. 2004)).

At a minimum, plaintiffs are required to "plead with particularity which defendants conspired,

how they conspired and how the conspiracy led to a deprivation of his constitutional rights."

*Dauven v. U.S. Bancorp,* No. 3:13–CV–00844–AC, 2015 WL 2239407, at *7 (D. Or. May 12,

2015). "A mere allegation of conspiracy without factual specificity is insufficient." *Karim-*

*Panahi v. L.A. Police Dep't,* 839 F.2d 621, 626 (9th Cir. 1988). *See also Olsen v. Idaho Bd. of*

*Med.,* 363 F.3d 916, 929–30 (9th Cir. 2004)(dismissing Section 1985 claim because the

"complaint is devoid of any discussion of an agreement amongst the [defendants] to violate

[plaintiff's] constitutional rights"). "Each member of the conspiracy must have knowledge of the

nature and scope of the agreement." *Harrell v. S. Or. Univ.,* No. 08–3037–CL, 2009 WL 321014,

*4 (D. Or. Feb. 9, 2009)(quotation omitted).

A "'plaintiff must [also] allege he is a member of a class which suffers from

invidious discrimination and the defendant's acts were motivated by animus towards that class.'"

*Id.* (quoting *Deleo v. Rudin,* 328 F. Supp. 2d 1106, 1112 (D. Nev. 2004)).

    **B.**    **Analysis**

In their FAC Plaintiffs do not specify which facts support their § 1985(2) claim

against Multnomah County. In their Response Plaintiffs assert the "facts alleged easily support a

claim that all Defendants were engaged in [a] conspiracy to violate" Plaintiffs' civil rights. Resp.

at 54. Plaintiffs elaborate as follows:

> The City's direct personal attacks on Plaintiffs and attacks on those
> perceived to support or even tolerate Plaintiffs, evolved into drawing in
> the MCDA, the City's "partners" (Cmplt. Ex. 4), and its officials into
> misuse of the criminal justice system to create a "chilling effect" on
> Plaintiffs. (*Id.*) As the activities of Antifa grew more extreme, so did the
> overt acts in support of Antia.

*Id.* None of these allegations, however, involve actions by Multnomah County. As noted, district attorneys are state actors, Multnomah County is not liable for their decisions as set out above.

In addition, to state a claim under the second clause of § 1985(2) "a plaintiff must demonstrate a deprivation of that right motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992)(quotation omitted). *See also Kush v. Rutledge*, 460 U.S. 719, 725-26 (1983)(explaining that "Congress did not intend to impose a requirement of class-based animus on persons seeking to prove a violation of their rights under the first clause of § 1985(2)," but that requirement remains in claims under the second clause of § 1985(2) and § 1985(3)). The Ninth Circuit requires "either that the courts have designated the class in question a suspect or quasi-suspect classification requiring more exacting scrutiny[8] or that Congress has indicated through legislation that the class required special protection." *Kobayashi v. McMullin*, No. 219CV06591SSSMAA, 2023 WL 3493991, at *18 (C.D. Cal. Mar. 2, 2023)(citing *Schultz v. Sundberg*, 759 F.2d 714, 718 (9th Cir. 1985)). In *Schultz* the court explained that it has extended the protection of § 1985 "beyond race only when the class in question can show that there has been a governmental determination that its members require and warrant special federal assistance in protecting their civil rights." 759 F.2d at 718 (quotation omitted). Plaintiffs cite no authority that suggests courts have designated Plaintiffs' or their group as warranting special federal assistance in protecting their civil rights. In fact, the Ninth

---

[8] The Supreme Court has identified three suspect classes: racial status, *Loving v. Virginia*, 388 U.S. 1, 11 (1967); national ancestry and ethnic origin, *Korematsu v. United States*, 323 U.S. 214, 216, (1944), *abrogated on other grounds by Trump v. Haw.*, 138 S.Ct. 2392 (2018); and alienage, *Graham v. Richardson*, 403 U.S. 365, 372 (1971). Two other classifications have been identified by the Court as quasi-suspect: gender, *Miss. Univ. for Women v. Hogan*, 458 U.S. 718, 723–24 (1982), and illegitimacy, *Lalli v. Lalli*, 439 U.S. 259, 265 (1978).

Circuit has made clear that the term class "unquestionably connotes something more than a group of individuals who share a desire to engage in conduct that the § 1985 . . . defendant disfavors. Otherwise, innumerable tort plaintiffs would be able to assert causes of action under § 1985(3) by simply defining the aggrieved class as those seeking to engage in the activity the defendant has interfered with." *Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 269 (1993). Relying on *Bray* the court found in *Orin v. Barclay,* 272 F.3d 1207, 1217 n.4 (9th Cir. 2001), that it was unclear that the plaintiff qualified "as a member of a class to which the protections of § 1985(3) apply, either by being an abortion protestor or by being a speaker who would convey a religious message on a public college's campus."[9]

Plaintiffs here attempt to establish class-based animus based on Defendants' dislike or lack of tolerance for Plaintiffs' political leanings. Plaintiff proffers no legal citation to support the proposition that individuals with those leanings are a protected class and courts have held in similar circumstances that individuals do not qualify as a class under § 1985(2). *See, e.g. ABC Sand and Rock Co., Inc. v. Maricopa Cnty.,* No. CV-17-01094-PHX-DGC, 2021 WL 3491947, *11 (D. Ariz. Aug. 9, 2021)(finding a class of citizens that have opposing political views did not meet the requirements of a suspect or quasi-suspect classification required for § 1985 relief); *Zeleny v. Brown,* No. 17-cv-07357-RS, 2019 WL 3430734, *6 (N.D. Cal. July 30, 2019)(finding neither class of lawful firearm owners nor class of people who vocally protest violence against women are a suspect or quasi-suspect group entitled to special protection pursuant to § 1985); *Mitchell v. City of Henderson,* No. 2:13–cv–01154–APG–CWH, 2015 WL

---

[9] *Orin* involved a claim under § 1985(3), but as the Court explained in *Kush,* the class requirement is the same for both § 1985(3) and the second clause of § 1985(2).

427835, *20 (D. Nev. Feb. 2, 2015)(class "comprising those who are victims of a police policy of punishing persons for exercising their First Amendment rights" is not a class recognized by § 1985(3)). The Court, therefore, concludes Plaintiffs fail to state a claim for violation of the second clause of § 1985(2) against Multnomah County.

In addition, the Ninth Circuit has held that "the absence of a section 1983 deprivation of rights precludes a section 1985 conspiracy claim predicated on the same allegations." *Caldeira v. County of Kauai*, 866 F.2d 1175, 1182 (9th Cir. 1989). Plaintiffs' § 1985 claim is predicated on the same allegations as their § 1983 claim. *See* FAC § 258 (alleging all Defendants violated 42 U.S.C. § 1985 when they "conspired to deprive plaintiffs of federally protected rights as alleged above"). Plaintiffs' § 1985 claim, therefore, fails because Plaintiffs' § 1983 claim fails. Accordingly, the Court grants Multnomah County's Motion to Dismiss Plaintiffs' § 1985 claim.

## IV.    Plaintiff's § 1986 Claim

As noted,  "[w]ithout a viable claim under 42 U.S.C. section 1985, Plaintiff's claim under 42 U.S.C. section 1986 also fails." *Thomas*, 2020 WL 8572493, at *2 (citing *Trice v. Pedersen*, 769 F.2d 1398, 1403 (9th Cir. 1985)("[A] cause of action is not provided under 42 U.S.C. § 1986 absent a valid claim for relief under section 1985.")). Because Plaintiffs fail to state a viable § 1985 claim against Multnomah County, the Court concludes their § 1986 claim also fails. Accordingly, the Court grants Multnomah County's Motion to Dismiss this claim.

## V.    State-Law Claims

Plaintiffs appear to assert state-law claims for malicious prosecution, false arrest and imprisonment, and negligence against Multnomah County. Oregon courts, however, have held that Multnomah County is "immune from liability for conduct of the deputy district attorney for

which he is immune." *Jackson v. Multnomah Cnty*., 76 Or. App. 540, 545 (1985). Because the

Court has concluded County Defendants are absolutely immune for Plaintiffs' state-law claims,

the Court also concludes Multnomah County is immune from liability. Accordingly, the Court

grants Multnomah County's Motion to Dismiss this claim.

In summary the Court grants Multnomah County's Motion to Dismiss Plaintiffs' claims

against it. Because the deficiencies in Plaintiffs' § 1983 and state-law claims claim cannot be

cured by amendment, the Court dismisses those claims without leave to amend. In addition,

because Plaintiffs' § 1983 claim cannot be cured by amendment, Plaintiffs also cannot cure the

failure to establish a claim for § 1985 or, in turn, § 1986 by amendment. The Court, therefore,

also dismisses Plaintiffs' §§ 1985 and 1986 claims without leave to amend.

Plaintiffs, however, may be able to allege facts to cure the deficiencies in their *Monell*

claim. The Court, therefore, grants Plaintiffs leave to amend that claim against Multnomah

County to the extent that the *Monell* claim is not based on enactment of the August 2020 policy

or on the decisions who to prosecute and whether to prosecute.

**CITY DEFENDANTS' MOTION TO DISMISS**

Defendants Traynor and City of Portland move to dismiss Plaintiffs' claims on the

ground that Plaintiffs' claims other than malicious prosecution are barred by the statute of

limitations, City Defendants are entitled to absolute judicial immunity for all of Plaintiffs' claims

that arise out of Traynor's testimony to the grand jury, and Plaintiffs fail to sufficiently state any

of their claims against City Defendants.

## I.    Incorporation by Reference and Judicial Notice

City Defendants ask the Court to take judicial notice of several documents and videos on

the basis that they are incorporated by reference in the FAC. Plaintiffs do not object to City

Defendants' request and the Court finds the documents and videos submitted by City Defendants may properly be incorporated by reference. The Court, therefore, grants City Defendants' request and considers the materials submitted by them with their Motion to Dismiss.

In their Response Plaintiffs ask the Court to take judicial notice of a number of other documents on the basis that the facts therein "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." City Defendants do not object to Plaintiffs' request and the Court finds these materials are appropriate for judicial notice. Accordingly, the Court grants Plaintiffs' request and considers the materials submitted by them with their Response.

## II.     Statute of Limitations

City Defendants assert all of Plaintiffs' claims against them except malicious prosecution are barred by the applicable statutes of limitations

### A.       § 1983 Claim

"Federal courts in § 1983 actions apply the state statute of limitations from personal-injury claims." *Anderson v. Scott*, No. 22-16086, 2023 WL 3563004, at *1 (9th Cir. May 19, 2023)(citing *Soto v. Sweetman*, 882 F.3d 865, 871 (9th Cir. 2018)). Personal-injury claims in Oregon must be commenced within two years of the injury. *See* Or. Rev. Stat. § 12.110(1). "[C]ivil rights claims [under § 1983] accrue, [however,] based on federal law, when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Id.* (quotation omitted). *See also Gibson v. United States*, 781 F.2d 1334, 1340 (9th Cir. 1986) (citations omitted)("[A]lthough state law prescribes the statute of limitation applicable to section 1983 claims, federal law governs the time of accrual.")

Plaintiffs filed this action on June 8, 2023, but the last allegation of any wrongdoing by Traynor that gave rise to Plaintiffs' § 1983 claim is his testimony to the grand jury, which occurred August 15, 2019, almost four years before this matter was filed. FAC ¶ 111. Although Plaintiffs allege other acts by Traynor, all of them occurred before his grand jury testimony. For example, on May 2, 2019, Traynor was assigned to investigate the events of May 1, 2019. Plaintiffs allege that during his investigation and before his grand jury testimony Traynor "made no serious attempt to identify the perpetrators on the Antifa side," he did not arrest an individual who allegedly kicked and spit on Gibson, and he did not "request charges be filed by the prosecutor's office." FAC ¶¶ 65-67. Plaintiffs fail to allege any actions taken by Traynor within the applicable limitations period.

Plaintiffs make several allegations against Wheeler and other City officials. All of the actions allegedly taken by Wheeler and others, however, occurred more than two years before Plaintiffs' filed this action and, therefore, are outside the limitations period. For example, Plaintiffs allege that on February 6, 2019, the "Portland City Council, led by Mayor Wheeler, passed a resolution condemning what it characterized as 'a rise of white nationalist, white supremacist and alt-right hate groups, many of which have been emboldened by the words and actions of the current presidential administration,' and declaring that 'the City of Portland will not tolerate hate in any form.'" FAC ¶ 40. Although the resolution did not refer to the Patriot Prayer Group, Plaintiffs allege this resolution "constituted a declaration of policy on the part of the City of Portland against allowing the free exercise by plaintiffs of their fundamental constitutional rights of free speech." FAC ¶ 42. Plaintiffs allege that on February 14, 2019, Wheeler "publicly and falsely attacked plaintiff Gibson as the 'leader of a group that perpetuates hate speech and violence." FAC ¶ 44. Plaintiffs allege that on February 14, 2019, Portland

Commissioner Jo Ann Hardesty "also publicly and falsely attacked defendant Gibson, utilizing an official website of the City of Portland, claiming that he conducted 'hate marches' within the City and, in substance, accusing him of racism and 'white supremacy.'" FAC ¶ 2019. On February 15, 2019, Wheeler announced he and Outlaw were "going to implement training for the Portland Police Bureau around how to identify white supremacy." FAC ¶ 48.

In their Response Plaintiffs do not point to any allegations of actions taken by City Defendants within two years of the filing of this action. Nor do they suggest they can do so. Rather Plaintiffs assert "[t]he claims against all parties are timely because of their participation in a conspiracy to violate the civil rights of Plaintiffs, the last overt action of which pleaded in the complaint was maintenance of the trial against Plaintiffs." Resp. at 60. The Court addresses whether that is sufficient to maintain a claim for conspiracy pursuant to § 1985 below, but concludes here that it is insufficient to state a timely claim for violation of § 1983 against City Defendants. The Court, therefore, concludes Plaintiffs' § 1983 claim is untimely.

**B.** **§ 1985 Claim**

As noted, in their Response Plaintiffs do not dispute that every action allegedly taken by City Defendants occurred more than two years before Plaintiffs' filed this action, but assert "[t]he claims against all parties are timely because of their participation in a conspiracy to violate the civil rights of Plaintiffs, the last overt action of which pleaded in the complaint was maintenance of the trial against Plaintiffs." Resp. at 60.

"The Ninth Circuit determines the accrual of civil conspiracies for limitations purposes in accordance with the last overt act doctrine." *Gibson,* 781 F.2d at 1340 (citations omitted). "Under this doctrine, injury and damage in a civil conspiracy action flow from the overt acts, not from the mere continuance of a conspiracy" *Id.* (quotation omitted). The cause of

action, therefore, "runs separately from each overt act that is alleged to cause damage to the plaintiff and separate conspiracies may not be characterized as a single grand conspiracy for procedural advantage." *Id.* (citation and quotation omitted). *See also Wesbrock v. Ledford*, 464 F. Supp. 3d 1094, 1100 (D. Ariz. 2020)("Under the last overt act doctrine, the injury and damage in a civil conspiracy action flows from the overt acts, not from the mere continuance of a conspiracy, and the cause of action runs separately from each overt act that is alleged to cause damage to the plaintiff."). "Accordingly, plaintiffs may recover only for the overt acts . . . that they specifically alleged to have occurred within the . . . limitations period." *Id.* (citation omitted). *See also Malone v. Yee*, 588 F. App'x 718, 719 (9th Cir. 2014)(the plaintiff "may recover only for overt acts in furtherance of the conspiracy alleged to have occurred in the two years before he filed suit.").

As noted, Plaintiffs do not point to any alleged acts of City Defendants that occurred within two years of the commencement of this action. The fact that Multnomah County Defendants "mainten[ed] . . . the trial against Plaintiffs," for which they enjoy prosecutorial immunity, is insufficient to establish an overt act by City Defendants in furtherance of a conspiracy that occurred within the limitations period. The Court, therefore, concludes Plaintiffs' § 1985 claim is untimely.

### C.    § 1986

42 U.S.C. § 1986 provides in pertinent part "no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued." A § 1986 claim accrues when the plaintiff first learns of the injury giving rise to the claim. *Finch v. Whitehead*, 828 F. App'x 418, 419 (9th Cir. 2020)(citing *Bagley v. CMC Real Est. Corp.*, 923 F.2d 758, 761-62 (9th Cir. 1991)). Plaintiffs do not allege any acts by City

Defendants that occurred within one year of the commencement of this action. The Court, therefore, concludes Plaintiffs' § 1986 claim is untimely.

### D.    State Law False Arrest and Imprisonment and Negligence

City Defendants assert Plaintiffs' state-law claims for negligence and false arrest and imprisonment are also time barred both by the statute of limitations and untimely tort claims notice pursuant to the Oregon Tort Claims Act ("OTCA").

The OCTA provides "[n]o action arising from any act or omission of a public body or an officer, employee or agent of a public body within the scope of [the Act]" may "be maintained unless notice of claim is given . . . within 180 days after the alleged loss or injury." Or. Rev. Stat. § 30.275(1)–(2)(b). "This 180-day notice period begins to run when the plaintiff knows that he has suffered some harm and knows that it is the result of tortious conduct, even if he does not know the full extent of the harm or that those facts had legal significance." *Leonetti v. Bray*, No. 3:16-CV-00014-AC, 2018 WL 11226238, at *6 (D. Or. Feb. 16, 2018), report and recommendation adopted, No. 3:16-CV-00014-AC, 2018 WL 11226237 (D. Or. Apr. 25, 2018) (citing *Dunn v. City of Milwaukie*, 270 Or. App. 478, 484 (2015)). The OTCA also provides, "an action arising from any act or omission of a public body or an officer, employee or agent of a public body within the scope of [the Act] shall be commenced within two years after the alleged loss or injury." Or. Rev. Stat. § 30.275(9). The two-year statute of limitations begins to run when the plaintiff "knows or, in the exercise of reasonable care, should have known facts that would make a reasonable person aware of a substantial possibility that each of the elements of a claim exists." *Smith v. Oregon Health Sci. Univ. Hosp. and Clinic*, 272 Or. App. 473, 479 (2015)(citing *Doe v. Lake Oswego Sch. Dist.*, 353 Or. 321, 333 (2013)).

Plaintiffs attach a tort claim notice dated September 6, 2022, to the FAC.

### 1.    Negligence

In their Response Plaintiffs assert the negligence claim is based on Traynor's "refusal to investigate and charge Antifa attackers" involved in the events of May 1, 2019. On October 17, 2019, however, Plaintiffs' counsel sent a letter to Traynor and copied Kalbaugh and Outlaw noting the contents of Traynor's report on the May 1, 2019, incident; pointing out that Traynor had identified an individual who interacted with Gibson on May 1, 2019; asserted that individual assaulted Gibson; and requested "that assault charges be filed against" the individual. Traynor Decl., Ex. C at 1. The record, therefore, reflects Plaintiffs were aware of Traynor's investigation of and alleged refusal to arrest "Antifa attackers" no later than October 17, 2019, which was more than 180 days before Plaintiffs provided their tort claim notice to the City of Portland. It is also over three years before Plaintiffs filed their Complaint. The Court, therefore, concludes Plaintiffs' state-law negligence claim is untimely.

### 2.    False Arrest and Imprisonment

Under Oregon law the elements of a false arrest claim are that a defendant intentionally confined the plaintiff, that plaintiff is aware of the confinement, and the confinement is unsupported by probable cause. *Miller v. Columbia Cnty.*, 282 Or. App. 348, 353–54 (2016).

Although the FAC does not allege the dates that Plaintiffs were arrested, in their Complaint in *Gibson v. Schmidt*, No. 3:20-cv-01580-IM, Plaintiffs allege that "approximately two months after" the events of May 1, 2019, Gibson "was charged . . . with a single count of riot [and] booked into custody." *Schmidt*, ECF 1 at ¶ 95. "Following that . . . Schultz was charged with a single count of riot . . . and arrested by United States Marshals." *Id.*

¶ 96. Further, Plaintiffs' attorney in that matter stated during a hearing that Plaintiffs were taken into custody at some point before August 17, 2019. Buchal Decl., Ex. 9 at 47. Plaintiffs, therefore, were confined and Plaintiffs were aware of the confinement more than 180 days before they filed their tort claims notice and more than two years before they filed this action. In addition, Plaintiffs filed the Complaint in *Schmidt* on September 11, 2020 and alleged video evidence of the events on May 1, 2019 "confirms that there were individuals in both the Antifa group and the protest group who engaged in violent and tumultuous conduct, but they are devoid of any evidence that [Gibson and Schmidt] engaged in such conduct ." *Schmidt* Compl. ¶ 79. More than 180 days before Plaintiffs submitted their tort claims notice, therefore, Plaintiffs knew facts that would make a reasonable person aware of a substantial possibility that each of the elements of a claim of false arrest and imprisonment existed. The Court, therefore, concludes Plaintiffs' false arrest and imprisonment claim is untimely.

## II.    Absolute Immunity

### A.    Federal Claims

"Witnesses, including police officers, are absolutely immune from liability [under § 1983] for testimony . . . before a grand jury." *Lisker v. City of Los Angeles*, 780 F.3d 1237, 1241–42 (9th Cir. 2015)(citing *Rehberg v. Paulk*, 566 U.S. 356, 369 (2012)). In addition, "[a]bsolute witness immunity also extends to . . . conspiracies to testify falsely." *Id.* at 1241 (citing *Franklin v. Terr*, 201 F.3d 1098, 1102 (9th Cir. 2000)). "Were it otherwise, a criminal defendant turned civil plaintiff could simply reframe a claim to attack the preparation instead of the absolutely immune actions themselves." *Rehberg*, 1566 U.S. at 369 (internal quotation marks omitted). *See also Cunningham v. Gates*, 229 F.3d 1271, 1291 (9th Cir.2 000)("[D]efendants are

. . . entitled to absolute immunity from damages liability for any alleged conspiracy to commit perjury.").

The Court, therefore, concludes Traynor is absolutely immune from any part of Plaintiffs' claims under §§ 1983, 1985, and 1986 that arise out of his testimony before the grand jury.

### B.    State-Law Claims

The Oregon Supreme Court has held that "[a]bsolute immunity . . . avails those whose 'special functions' require complete protection from liability." *Tennyson v. Children's Servs. Div., a Div. of Dep't of Hum. Res.,* 308 Or. 80, 86 (1989)(citing *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982)). Absolute immunity "insulates conduct within the scope of a particular function, regardless of whether that conduct violated rights of which a reasonable person would have known." *Id.* "Absolute immunity protects functions that are 'integral parts of the judicial process.'" *Id.* (quoting *Briscoe v. LaHue*, 460 U.S. 325, 335 (1983)). Thus "[p]olice officers testifying at trial . . . are entitled to absolute immunity." *Id.* (citations omitted).

The Oregon Supreme Court has approved "the application of an absolute privilege . . . in very limited circumstances." *DeLong v. Yu Enterprises, Inc.*, 334 Or. 166, 171 (2002). A circumstance in which it has approved absolute privilege, however, is "statements that are made as part of judicial and quasi-judicial proceedings." *Id.* (citing *Binder v. Oregon Bank*, 284 Or. 89, 91 (1978). The Court explained:

> It is essential to the ends of justice that all persons participating in judicial proceedings . . . should enjoy freedom of speech in the discharge of their public duties or in pursuing their rights, without fear of consequences. The purpose of the law is, not to protect malice and malevolence, but to guard persons acting honestly in the discharge of a public function, or in the defense of their rights, from being harassed by action imputing to them dishonesty and malice.

*Id.* at 173 (quotation omitted). In addition, absolute immunity for participating in judicial

proceedings has been recognized as a part of the immunities for discretionary acts under the

OTCA, Or. Rev. Stat. § 30.265(6)(c). *See Praggastis v. Clackamas Cnty.*, 305 Or. 419, 426–27

(1988)(common law immunities for judicial and quasi-judicial acts are part of immunities for

discretionary acts under ORS 30.265(3)).

Traynor was performing a function integral to the judicial process when he

testified before the grand jury in a criminal proceeding. The Court, therefore, concludes he is

absolutely immune for Plaintiffs' state-law claims to the extent they arise out of his grand jury

testimony.

**III.    Malicious Prosecution**

To the extent Plaintiffs' state-law claim for malicious prosecution does not arise out of

Traynor's testimony before the grand jury, City Defendants allege it should be dismissed because

Plaintiffs fail to allege sufficient facts to support that claim.

To state a claim for malicious prosecution a plaintiff must allege:

> "(1) the institution or continuation of the original criminal proceedings;
> (2) by or at the insistence of the defendant; (3) termination of such
> proceedings in the plaintiff's favor;  (4) malice in instituting the
> proceedings; (5) lack of probable cause for the proceeding; and (6) injury
> or damage because of the prosecution."

*Blandino v. Fischel*, 179 Or. App. 185, 190–91 (2002)(quoting *Rose v. Whitbeck*, 277 Or. 791,

795, *mod. on other grounds* 278 Or. 463 (1977)). Plaintiffs, however, fail to allege facts to

support the first and second elements. Specifically, there are no allegations that the criminal

proceedings against Plaintiffs were initiated or continued by Traynor or any City employee or

that Traynor insisted on the institution or continuation of criminal proceedings against Plaintiffs.

An individual must have an "active role" in prosecution to be liable to malicious prosecution.

*Waldner v. Dow*, 128 Or. App. 197, 201 (1994). Providing information to the prosecutor and testifying at grand jury proceedings are insufficient for liability to attach. *Id.* ("It is not enough that [the defendant] appears as a witness against the accused either under subpoena or voluntarily, and thereby aids in the prosecution of the charges which he knows to be groundless.[10] His share in continuing the prosecution must be active, as by insisting upon or urging further prosecution."). The allegations in the FAC focus on the actions of District Attorneys Underhill and Schmidt and Deputy District Attorneys Kalbaugh and Hughey. For example, Plaintiffs allege Kalbaugh prepared and executed "the secret indictments" on behalf of Underhill, "signed and caused to be filed two Affidavit[s] in Support of Arrest Warrant," conducted grand jury proceedings, and presented evidence at the grand jury proceeding. FAC ¶¶ 88, 96, 111, 112. The only factual allegations involving Traynor or the City are that Traynor gave testimony before the grand jury. As noted, however, Traynor and the City are absolutely immune for any claim arising from Traynor's grand jury testimony. In addition, there are no allegations that Traynor initiated charges against Plaintiffs, nor could he. Under Oregon law district attorneys have the sole authority to make charging decisions. See Or. Rev. Stat. §§ 8.660, 132.330.

In their Response Plaintiffs do not address the failure to allege facts to support the first two elements of their malicious prosecution claim. Plaintiffs argue only that the FAC "fairly reeks" of malice. Resp. at 56. This statement, however, is insufficient to point to facts that support at least an inference that the criminal proceedings against Plaintiffs were instituted or

---

[10] City Defendants do not concede that the charges against Plaintiffs were groundless or that Traynor knew or believed them to be groundless.

continued by or at the insistence of Traynor. The Court, therefore, concludes Plaintiffs have failed to state a state-law claim for malicious prosecution.

In summary the Court grants City Defendants' Motion to Dismiss Plaintiffs' claims against them. Plaintiffs may be able to cure the defects in their claims against the City Defendants. The Court, therefore, grants Plaintiffs leave to amend their claims against City Defendants to the extent that (1) they can allege facts to support their §§ 1983, 1985, and 1986 claims as well as their claims for negligence and false arrest and imprisonment within the relevant limitations periods set out herein and (2) they can allege facts to support their federal and state-law claims that do not arise from Traynor's testimony before the grand jury.

## CONCLUSION

The Court:

(1)    GRANTS County Defendants' Motion to Dismiss, ECF 19, and dismisses Plaintiffs' claims against them without leave to amend;

(2)    GRANTS Multnomah County's Motion to Dismiss, ECF 18, and dismisses Plaintiffs' claims against it with leave to amend as set out in this Opinion and Order; and

(3)    GRANTS City Defendants' Motion to Dismiss, ECF 21, and dismisses Plaintiffs' claims against them with leave to amend as set out in this Opinion and Order.

Plaintiffs may file a second amended complaint as permitted in this Opinion and Order no later than 14 days from the date of this Opinion and Order. Failure to file a second amended

complaint will result in dismissal of this action.

       IT IS SO ORDERED.

       DATED:___February 26, 2024_____.


                                  _____
                                  MARCO A. HERNÁNDEZ
                                  United States District Judge